NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 16, 2023

S23Y0585. IN THE MATTER OF ANDREW MATTESON.

PER CURIAM.

This disciplinary matter is before the Court on the renewed petition for voluntary discipline filed by Andrew Matteson (State Bar No. 477140) pursuant to Bar Rule 4-227 (b) before the issuance of a formal complaint. In Matteson's first petition for voluntary discipline, he sought a suspension of his license to practice law for a period of time ranging from three months to six months as a sanction for his violations related to two disciplinary matters. Matteson previously asserted several mitigating factors, including that he had mental health conditions that contributed to his misconduct and that he made restitution to his clients who were impacted by his misconduct. The Court rejected Matteson's first petition because he failed to provide proof of his mental health conditions and proof that

he made his clients whole, and because he failed to assure the Court that he had taken steps to ensure that he would not commit the same type of violations upon his readmission to the practice of law. See *In the Matter of Matteson*, 314 Ga. 576, 580-581 (878 SE2d 196) (2022) ("*Matteson I*"). In this renewed petition, Matteson adds nothing to the recitation of the facts, the admitted violations, or the aggravating and mitigating factors supporting his requested discipline. Instead, he addresses the concerns this Court highlighted in *Matteson I* by submitting proof related to his mental health conditions and the treatment thereof, submitting proof that his clients have been made whole, and by proposing conditions on his reinstatement. He also agrees to a six-month suspension but requests that it be imposed nunc pro tunc. Because Matteson has sufficiently addressed the deficiencies set forth in *Matteson I*, and because we agree that a six-month nunc pro tunc suspension is appropriate, we accept Matteson's amended petition for voluntary discipline.

The underlying facts of the two disciplinary matters are recited at length in *Matteson I*. In summary, as to the first disciplinary matter, Matteson admits that he had represented a client in various legal matters over several years, and that at some point he stopped apprising his client of his work and of the important developments in the legal matters; that the client eventually sued Matteson, who chose not to dispute the client's claims; that a consent judgment was eventually entered against Matteson in the amount of $86,520; and that he quickly took steps to satisfy the judgment. *Matteson I*, 314 Ga. at 576-577. As to the second disciplinary matter, Matteson admits that he agreed to represent a client and his company in a lawsuit against them for damages related to a business dispute; that, although he filed a motion to dismiss the lawsuit, he failed to take any additional material action in the case, even after a motion for default judgment was filed and granted and a significant judgment was entered against his clients; that these clients pursued a legal malpractice claim against Matteson and his former law firm; and that the claim was arbitrated, resulting in the issuance of an

3

award of over $640,000 in the clients' favor. Id. at 577-578. Although, in his initial petition, Matteson failed to support his assertion that his clients' claims had been resolved in full, he has now provided proof that he satisfied the judgments his clients obtained against him.

The facts set out in *Matteson I* support Matteson's admissions in this renewed petition that

> in connection with his representation of the client in [the first matter] he violated Rules 1.2 (a),[1] 1.4 (a),[2] 1.15 (I) (c),[3] and 1.16 (a) (2)[4] of the [Georgia Rules of Professional Conduct ("GRPC"), found at Bar Rule 4-102 (d)]. And, with regard to his representation of the clients

---

[1] "Rule 1.2 (a) requires a lawyer to consult with and abide by a client's decisions concerning the scope and objectives of the representation." *Matteson I,* 314 Ga. at 578 n.1.

[2] "Rule 1.4 (a) provides that a lawyer shall "promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required; shall consult with the client about the means by which the client's objectives are to be accomplished; shall keep the client reasonably informed about the status of the matter; shall promptly comply with reasonable requests for information; and shall explain matters to the extent necessary to permit the client to make informed decisions regarding the representation." Id. at 578 n.2.

[3] "Rule 1.15 (I) (c) provides that, upon receiving funds in which a client has an interest, a lawyer shall promptly notify the client and deliver that portion of the funds which the client is entitled to receive." Id. at 578 n.3.

[4] "Rule 1.16 (a) (2) provides that a lawyer shall withdraw from representation of a client if the lawyer's physical or mental condition materially impairs his ability to represent the client." Id. at 578 n.4.

4

in [the second matter], Matteson admits that he violated Rules 1.1,[5] 1.2 (a), 1.3,[6] 1.4, and 1.16 (a) (2) of the GRPC. The maximum sanction for a violation of Rules 1.4 and 1.16 (a) is a public reprimand, while the maximum sanction for a violation of Rules 1.1, 1.2, 1.3, and 1.15 (I) is disbarment.

*Matteson I,* 314 Ga. at 578-579.

Similar to his first petition, Matteson admits no aggravating factors, but offers in mitigation "that he has no disciplinary record; that he lacked a dishonest or selfish motive; . . . that he made a timely good faith effort to make restitution or to rectify the consequences of his misconduct; that he displayed a cooperative attitude toward the disciplinary proceedings; and that he is remorseful for his actions and inactions." *Matteson I*, 314 Ga. at 579 (citing ABA Standard 9.32 (a), (b), (d), (e), and (l)). In addition, Matteson continues to offer as a mitigating factor that, at the time of these violations, he was suffering from a mental disability or emotional problems for which he was being treated by a doctor. See

---

[5] "Rule 1.1 requires a lawyer to provide competent representation to his client." Id. at 578 n.5.

[6] "Rule 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client." Id. at 578 n.6.

ABA Standard 9.32 (c) and (i). However, unlike in his first petition for voluntary discipline, Matteson has now provided, under seal, letters from several mental health professionals who have treated or are continuing to treat Matteson. These letters support Matteson's claims that he began experiencing symptoms of depression during the above-described representations; that he has been treated for depression and anxiety since 2015; that he has been relatively compliant with treatment and medication since that time; and that his mental health does not present an impediment to his practice of law. Additionally, Matteson has provided an affidavit supporting his claim that his experience with depression ultimately led him to close his law practice in 2019 and to step away from the practice of law.

Matteson further states in his petition and affidavit that, in early 2019, he began advising his clients in writing that he could no longer act as their attorney and that, for a six-month period beginning on April 1, 2019, he performed no legal work and had no source of income. In support of these claims, Matteson provided a

copy of a letter he sent to a client, in which Matteson informs the client that he is no longer able to serve as the client's legal representative because he will no longer be practicing law due to personal issues, updates the client on the status of the client's case, and offers to assist the client in retaining new counsel. Additionally, Matteson provided with his sworn affidavit, in which he states that from April 2019 through October 2019 he did not work at all, his 2019 income tax returns as evidence that he was not fully employed in 2019.

Based on these claims, Matteson now requests as discipline a six-month suspension from the practice of law and that this suspension be imposed nunc pro tunc, in consideration of the fact that, beginning in April 2019, he voluntarily refrained from the practice of law for at least six months and fulfilled his ethical obligations to his clients. See *In the Matter of Onipede*, 288 Ga. 156, 157 (702 SE2d 136) (2010) ("[W]hen an attorney requests entry of a suspension or voluntary surrender order nunc pro tunc, it is the lawyer's responsibility to demonstrate that they voluntarily stopped

7

practicing law, the date on which their law practice ended, and that they complied with all the ethical obligations implicated in such a decision, such as assisting clients in securing new counsel and facilitating the transfer of client files and critical information about ongoing cases to new counsel.").  Further, Matteson proposes as part of his discipline that every three months in the first year following his reinstatement he be required to provide the Office of General Counsel ("OGC") with an opinion from a mental health professional certifying that his mental health does not present an impediment to his practice of law; that he participate in the State Bar of Georgia's Law Practice Management Program's General Consultation service; and that he implement any recommendations made by that service during such consultation.[7]

---

[7] Matteson has attached to his affidavit a letter from a mental health professional certifying that, as of January 2023, his mental health does not present an impediment to his practice of law.  Further, Matteson states in his sworn affidavit that he has already participated in the State Bar of Georgia's Law Practice Management Program's General Consultation service, which occurred in February 2023, and the Bar does not dispute Matteson's participation in this program.

The State Bar has filed a response, noting that Matteson has now submitted proof of the mental health conditions that contributed to his misconduct, provided evidence that his clients' claims have been resolved, and has taken steps to ensure that his ethical failures will not reoccur. The Bar does not dispute Matteson's asserted factors in mitigation and asserts that it does not oppose the six-month suspension requested by Matteson and that the discipline Matteson requests is sufficient to serve as "a penalty to the offender, a deterrent to others, and [] an indication to laymen that the courts will maintain the ethics of the profession."[8] *In the Matter of Dowdy*, 247 Ga. 488, 493 (277 SE2d 36) (1981). Moreover, the Bar asserts that this Court has imposed similar discipline in other cases involving violations of the Rules implicated here. See, e.g., *In the Matter of Kirby*, 312 Ga. 341 (862 SE2d 550) (2021) (accepting petition for voluntary discipline and imposing a six-

---

[8] Notably, however, the Bar notes in aggravation, as it did before, that Matteson's behavior suggests a pattern of misconduct, that he committed multiple offenses, and that he had substantial experience in the practice of law. See ABA Standard 9.22 (c), (d), and (i).

month suspension for attorney who admitted violating Rules 1.2, 1.3, 1.4, and 1.16 in four separate matters where attorney addressed his mental health and practice management problems); *In the Matter of Johnson*, 303 Ga. 795 (815 SE2d 55) (2018) (accepting petition for voluntary discipline and imposing a six-month suspension, with conditions, for attorney who violated Rules 1.3, 1.4, 1.5, 1.15 (I), 1.16 (d), and 5.5 (a) in six separate client matters where attorney was suffering from personal and emotional problems at time of misconduct and had taken intervening efforts to improve himself and his law practice); *In the Matter of Huggins*, 291 Ga. 92 (727 SE2d 500) (2012) (accepting petition for voluntary discipline and imposing six-month suspension with conditions for reinstatement for violations of Rules 1.3, 1.4, 1.15 (I), 1.15 (II), 1.16, and 9.3 in five client matters, where attorney had no prior disciplinary history and was receiving treatment for his personal issues). Further, the State Bar does not oppose Matteson's request that his suspension be imposed nunc pro tunc to April 1, 2019. The

Bar, therefore, recommends that the Court accept Matteson's renewed petition for voluntary discipline.

Having reviewed the record in this case, including the documentation submitted under seal which includes Matteson's sworn affidavit, 2019 tax returns, and client letter, we agree that the imposition of a six-month suspension is appropriate under these circumstances and is consistent with the precedent cited above. We also agree that Matteson has made the required showing under *Onipede* to support the imposition of his six-month suspension nunc pro tunc to April 1, 2019, and note that, because Matteson has sufficiently shown that he voluntarily stopped practicing law from April 1, 2019, through September 30, 2019, he has completed his suspension. Accordingly, Matteson is hereby reinstated with the conditions that, within 90 days of the date of this opinion, he provide the OGC with an opinion from a mental health professional certifying that his mental health does not present an impediment to his practice of law and provide such an opinion every three months for the first year of his reinstatement, and that he implement any

11

recommendations made by the State Bar of Georgia's Law Practice Management Program's General Consultation service.

For these reasons, Andrew Matteson is hereby suspended from the practice of law nunc pro tunc as of April 1, 2019, and he is hereby reinstated with the conditions set forth above.

*Petition for voluntary discipline accepted. Six-month suspension nunc pro tunc. Reinstated with conditions. All the Justices concur.*